2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit



4-13-2007

# Ollie's Bargain v. New England Bus

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5270

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ollie's Bargain v. New England Bus" (2007). *2007 Decisions.* Paper 1309.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1309

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5270

OLLIE'S BARGAIN OUTLET, INC.

v.

NEW ENGLAND BUSINESS EXCHANGE,
Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 03-cv-01819)
District Judge:  Honorable Yvette Kane

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2007

Before:  RENDELL, BARRY and CHAGARES, Circuit Judges

(Filed April 13, 2007)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellant New England Business Exchange ("NEBEX") appeals from the Order of the

United States District Court for the Middle District of Pennsylvania granting summary judgment

to Appellee Ollie's Bargain Outlet, Inc. ("Ollie's") on its action for declaratory relief as to its

contract liability against NEBEX and denying summary judgment on NEBEX's cross-motion for summary judgment as to its claim for breach of contract. NEBEX also appeals from the District Court's denial of a motion to reconsider its decision to grant Ollie's declaratory relief. We will affirm the Orders of the District Court.

I.

In February 2000, Ollie's owner, Morton Bernstein, decided to sell his business and approached NEBEX to find potential buyers and to broker the sale. On February 9, 2000, Ollie's and NEBEX entered into a written agreement setting forth the terms of NEBEX's services. In relevant part, the agreement stated that:

> The Agreement shall be in effect for three months from the date of [Ollie's] signing, and continue thereafter until terminated by either party for any reason upon thirty days prior written notice.

> ***

> If a Sale occurs within twenty-four (24) months after the expiration or termination of this Agreement which involves the use of Work product or to an employee, shareholder, director or affiliate of [Ollie's] or to any party with whom, during the term of this Agreement, NEBEX has had discussion or negotiation, or whose name has been furnished by NEBEX to [Ollie's], NEBEX shall be entitled to and [Ollie's] agrees to pay NEBEX Success Fees as calculated above in full at closing of such sale in cash or by cashier's check.

> ***

> For purposes of this Agreement, a "Sale" includes any transaction, including but not limited to a merger, reverse merger, the purchase of stock or assets, license or employment arrangements or financings whereby [Ollie's] is acquired, in whole or in party by a third party or by an employee, shareholder, director or affiliate of [Ollie's].

Appendix for Appellant at 1-2.

2

Following both parties' assent to these terms, NEBEX began to market Ollie's by sending out mailings to potential buyers. Rather than disclose Ollie's name and provide full details of the company's operation, these mailings described the company anonymously and in general terms. However, NEBEX invited interested parties to sign and return a confidentiality agreement in exchange for a more detailed "Descriptive Memorandum" that identified Ollie's and provided more specific information about the business. In April 2003, Barron Fletcher, a managing director for SKM Growth Investors ("SKM Growth") received the general mailing from NEBEX and signed and returned the confidentiality agreement. NEBEX sent Fletcher the Descriptive Memorandum but, after reviewing it, Fletcher quickly responded that SKM Growth was not interested. NEBEX and SKM Growth went their separate ways without further contact.

Although another prospective buyer expressed interest in Ollie's, the transaction was never consummated and the remainder of the year 2000 passed without a completed sale. Then, in January 2001, Bernstein contacted NEBEX by phone and, as he describes it, orally terminated the contract. NEBEX, on the other hand, characterizes the conversation as one in which Bernstein simply expressed his desire to defer efforts to sell until Ollie's could rectify an inventory problem. Regardless of what was said, neither side disputes that nothing transpired between the two companies until December 2002 when, in an apparent attempt to comply with the NEBEX agreement, Ollie's sent NEBEX a written termination of the contract.

In the nearly two years between Bernstein's call to NEBEX and transmission of the termination letter, Ollie's retained a new company, Financo, to help broker a sale. This move proved successful, as Financo arranged for Ollie's to be sold for more than $75 million to the private bank Saunders, Karp & Megrue ("SKM") on August 7, 2003.

On September 23, 2003, Ollie's filed suit in the Court of Common Pleas in Dauphin County, Pennsylvania, seeking a declaration that Ollie's did not owe NEBEX a brokerage fee under the terms of their agreement. NEBEX removed the action to the United States District Court for the Middle District of Pennsylvania and subsequently filed an answer and a number of counterclaims, alleging breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, violation of Chapter 93A of Massachusetts General Laws and claims for attorneys' fees.

On March 31, 2005, after discovery, the District Court ruled for Ollie's on the parties' cross-motions for summary judgment as to the breach of contract claim. On June 14, 2005, the District Court denied NEBEX's motion to reconsider that ruling. Finally, on November 28, 2005, the District Court dismissed the remainder of NEBEX's counterclaims, finding them no longer viable in light of the Court's earlier ruling on the breach of contract claim.

NEBEX now appeals the District Court's determination on the breach of contract claim, as well as the Court's denial of NEBEX's motion to reconsider.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and will review

4

the District Court's grant of summary judgment *de novo*. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## II.

NEBEX's chief argument is that SKM and SKM Growth should be considered the same party under the terms of the agreement and that, because Ollie's was sold within 24 months of termination of the agreement, Ollie's owes NEBEX approximately $2 million in brokerage fees. Ollie's does not dispute that a sale took place, nor does it contest the District Court's determination that the agreement was terminated only with Ollie's December 2002 letter, rather than with Bernstein's January 2001 phone call. Instead, Ollie's argues that, despite some affiliation between the two, SKM and SKM Growth are not the same party and, therefore, that Ollie's is not liable under the contract.

In considering this argument, the District Court found that NEBEX "puts forth no evidence that SKM Growth can present, act on behalf, or bind SKM, or that either party can be liable for the actions of the other. Rather [NEBEX] merely offers certain marketing materials which indicate a close affiliation. This alone is not enough to negate the corporate formalities which keep companies separate legal entities, and keep legal entities separate parties during litigation." Appendix for Appellant at 9. Given the paucity of evidence supporting NEBEX's claim, the District Court had little trouble finding that SKM and SKM Growth were not the same party and, therefore, that NEBEX was not entitled to fees under the agreement. We find the District Court's opinion to have

5

accurately characterized the evidence NEBEX put forward and, therefore, we see no reason to disturb the District Court's decision.

Alternatively, NEBEX argues that Ollie's is liable under the agreement because its sale was to an "employee, shareholder, director or affiliate." NEBEX bases this claim on the fact that Mark Butler, a minority shareholder of Ollie's up until the date of sale, reinvested money in the newly purchased company. In NEBEX's view, Butler's reinvestment makes him a shareholder-purchaser under the contract and, therefore, triggers Ollie's duty to pay NEBEX brokerage fees. However, the District Court determined that "the scant evidence available to the Court indicates that Mr. Butler became an investor [in the newly acquired company] only after SKM purchased [Ollie's]. Moreover, SKM clearly was the purchasing party in this transaction. Mr. Butler merely reinvested funds from the old company to the new one." Appendix for Appellant at 11. Again, we see nothing in the record that compels us to reach a different conclusion.

Finally, NEBEX sought reconsideration of these rulings under Federal Rule of Civil Procedure 59(e) on the grounds that "newly discovered evidence" had come to light. Although new evidence is a basis for reconsideration under the Rule, the District Court noted, and NEBEX does not now dispute, that NEBEX was in possession of this evidence *prior* to the District Court's ruling on the parties' cross-motions for summary judgment. Because NEBEX was aware of the evidence prior to the resolution of the case, we agree with the District Court that the evidence could not have been characterized as "new"

under Rule 59(e) and, therefore, that it was not a basis for reconsideration.

III.

For these reasons, we will affirm the Orders of the District Court.